**In re: MANAGED CARE LITIGATION.**

**This Document Relates to Provider Track Cases.**

**No. MDL 1334.**

**No. 00–1334–MD.**

United States District Court, S.D. Florida, Miami Division.

April 26, 2001.

*ORDER GRANTING IN PART PACIFI-CARE'S MOTION TO COMPEL, AND ORDER MODIFYING PRIOR ARBITRATION ORDER CON-CERNING FOUNDATION'S MO-TION TO COMPEL*

MORENO, District Judge.

THIS MATTER came before the Court upon Defendants PacifiCare Health Sys-tems, Inc. and PacifiCare Operations, Inc.'s ("PacifiCare's") Contingent Supple-mental Motion to Compel Arbitration (**D.E. No. 888**), filed on *January 26, 2001.*

THE COURT has considered the mo-tion, responses, and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

ADJUDGED that the motion is GRANTED in part for the reasons ad-dressed below. It is also

ADJUDGED that the Court's prior arbi-tration order ("Order") dated *December 11, 2000* is MODIFIED with respect to Foundation's motion to compel arbitration for the reasons addressed below.

In its prior Order, the Court ruled that Dr. Breen's claims against PacifiCare that stem from Dr. Breen's affiliation with Sut-ter Health through Sutter Independent Physicians (the "Sutter Agreement (Pacifi-Care)") are to be arbitrated, except for Dr. Breen's RICO claims, as well as his aiding and abetting and conspiracy claims that stem from contractual relationships with other managed care companies. The RICO claims were deemed non-arbitrable because the Sutter Agreement (PacifiCare) prevented the arbitrator from awarding punitive (treble) damages. PacifiCare now has filed a "Contingent Supplement Mo-tion to Compel Arbitration" based upon Dr. Breen's affiliation with Mercy Medical Foundation through Golden State Physi-cians (the "Mercy Agreement"), as well as for other reasons addressed in Part II.

**I. Arbitration of Dr. Breen's Claims Against PacifiCare Under Mercy Agreement, and Modification of Or-der Concerning Foundation's Motion to Compel Arbitration**

Similar to the Sutter Agreement (Pacifi-Care), the Mercy Agreement contains an

arbitration clause as the means for resolving disputes stemming from that agreement. (Mercy Agreement, § 6.2 (stating that "any dispute or claim between the parties arising out of the interpretation of or performance under the [Mercy] Agreement" shall be arbitrated.)). However, the Mercy Agreement's arbitration clause dos not prevent an arbitrator from awarding punitive damages. Thus, PacifiCare moves the Court to compel Dr. Breen to arbitrate all claims arising out of the Mercy Agreement.[1]

The Court now is presented with a situation where the litigants have entered into two different contracts that contain inconsistent arbitration agreements. The Court was faced with precisely the same scenario in its prior Order with respect to Dr. Kelly's claims against CIGNA, as well as a somewhat similar scenario concerning Dr. Breen and Foundation. After reviewing its prior Order, it appears that the Court did not resolve these two matters consistently. With CIGNA there was a Specialist Physician Agreement ("Specialist Agreement") and a Physician Managed Care Agreement ("Physician Agreement"). The Specialist Agreement mandated arbitration for the majority of Dr. Kelly's claims, while the Physician Agreement did not mandate arbitration. The Court ruled that Dr. Kelly's claims that stem from the Specialist Agreement shall be arbitrated, while his claims that stem from the Physician Agreement shall be litigated before the undersigned.

However, with Foundation and Dr. Breen the Court analyzed four agreements between the litigants: (1) Sutter Agreement between Health Net and Sutter Independent Physicians as a Participating Medical Group ("Sutter Agreement (Foundation)"), (2) Physicians Services Agreement between Health Net and Foundation Health Systems Affiliates and Dr. Breen ("Physicians Services Agreement"), (3) Champus/Tricare Prime and Extra Professional Provider Agreement between Foundation Health Systems Affiliates and Dr. Breen ("Champus/Tricare Agreement"), and (4) CHW Agreement between Foundation Health Systems Affiliates and CHW Medical Foundation as a Participating Medical Group ("CHW Agreement"). The Court expressed concern regarding the provision in the Sutter Agreement (Foundation) that required Dr. Breen to advance the arbitration fees as the initiating party, in view of the Eleventh Circuit's concern that steep filing fees and costs could prevent meaningful relief through arbitration. *Randolph v. Green Tree Fin. Corp.,* 178 F.3d 1149 (11th Cir.1999) *rev'd in part Green Tree Fin. Corp. v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). The Court found the arbitration clauses in the Physicians Services Agreement and the Champus/Tricare Agreement to be enforceable and compelled arbitration for all of Dr. Breen's claims, except for aiding and abetting and conspiracy claims that stem from contractual relationships with other managed care companies. The Court did not compel arbitration based upon the Sutter Agreement (Foundation), nor on the CHW Agreement that contained a provision prohibiting the arbitrator from awarding punitive damages and a six month statute of limitations to institute arbitration. But the Court did *not,* at that time, retain jurisdiction over Dr. Breen's claims that stemmed from the Sutter Agreement (Foundation) and CHW Agreement.

██ After review of its prior Order and the parties' pleadings concerning Pacifi-

---

**1.** Except as modified by this Order, the Court incorporates by reference its prior arbitration Order.

Care's present motion to compel, the Court finds that the approach taken with respect to Dr. Kelly's claims against CIGNA is the correct way to handle instances where the litigants have multiple agreements with inconsistent arbitration clauses. It is axiomatic that parties should only be compelled to arbitrate disputes that the parties have agreed to arbitrate. *E.g., AT & T Tech. v. Communications Workers of Am.,* 475 U.S. 643, 648–49, 106 S.Ct. 1415, 89 L.Ed.2d 648 ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.") (citation omitted); *Morewitz v. West of England,* 62 F.3d 1356, 1365 (11th Cir.1995) (expressing reluctant to mandate arbitration where the parties did not bargain to do so); *Goldberg v. Bear Stearns & Co.,* 912 F.2d 1418, 1419 (11th Cir.1990) (holding that parties will not be required to arbitrate disputes that they have not agreed to arbitrate, despite federal presumption in favor of arbitration).

■ Accordingly, Dr. Breen's claims against PacifiCare that stem from the Mercy Agreement, including RICO claims, shall be arbitrated. However, Dr. Breen's RICO claims against PacifiCare that stem from the Sutter Agreement (PacifiCare) shall be litigated before the undersigned, as ruled upon in the Court's prior Order, because the arbitrator may not award punitive damages under that arbitration agreement. This holding has no impact on the Court's prior ruling that aiding and abetting and conspiracy claims lodged against PacifiCare that stem from contractual relationships with other managed care companies are to be litigated before the undersigned.

In view of the Court's holding today, the Court now must modify its prior Order with respect to Foundation's motion to compel arbitration. As discussed above, the Court compelled Dr. Breen to arbitrate all of his claims against Foundation based upon two arbitration agreements. The Court now must analyze the other two arbitration agreements to determine whether to compel arbitration of Dr. Breen's claims that stem from the Sutter Agreement (Foundation) and CHW Agreement.

■ In view of the Supreme Court's holding in *Green Tree Fin. Corp. v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), the Court's concern regarding the Sutter Agreement (Foundation)'s requirement that Dr. Breen advance the arbitration costs as the initiating party is diminished. Thus, the Court shall compel Dr. Breen to arbitrate all claims that stem from the Sutter Agreement (Foundation). However, the concerns raised in its prior Order regarding the CHW Agreement prevent the Court from compelling arbitration of Dr. Breen's RICO claims that stem from this agreement. As such, the Court will retain jurisdiction to hear Dr. Breen's RICO claims that stem from the CHW Agreement due to the arbitrator's inability to award punitive (treble) damages. All of Dr. Breen's other claims stemming from this agreement shall be arbitrated. This ruling likewise has no impact on the Court's prior holding that aiding and abetting and conspiracy claims lodged against Foundation that stem from contractual relationships with other managed care companies are to be litigated before the undersigned.

## II. Whether to Compel Arbitration of Drs. Burgess, Kelly, Book, and Davis' Claims Against PacifiCare

■ PacifiCare also files the instant motion to compel arbitration with respect to Drs. Burgess, Kelly, Book, and Davis' claims against PacifiCare. PacifiCare has reviewed its records and now proffers agreements between these doctors and Pa-

cifiCare that contain arbitration clauses. As such, any claims lodged against Pacifi-Care by these doctors that stem from the parties' agreements should be arbitrated. However, a careful review of the Provider Plaintiffs' Consolidated, Amended Complaint (the "Complaint") indicates that, with one exception, none of these doctors have lodged any claims against PacifiCare that stem from the parties' agreements. Rather, these doctors only allegations against PacifiCare concern aiding and abetting and conspiracy claims that stem from contractual relationships with other managed care companies. Thus, the Court finds no justification to compel arbitration between these doctors and PacifiCare based upon the parties' agreements, which are not at issue in the instant lawsuit.

However, Dr. Book alleges in the Complaint a contractual relationship with PacifiCare, and PacifiCare proffers the parties' Southwest Florida Agreement, which contains an arbitration clause, to support its motion to compel arbitration. This agreement prevents an arbitrator from awarding punitive (treble) damages. Thus, the Court finds this agreement quite similar to the agreement discussed above between PacifiCare and Sutter Health involving Dr. Breen. Accordingly, the Court shall compel arbitration of all of Dr. Book's claims against PacifiCare, except for RICO claims and aiding and abetting and conspiracy claims that stem from contractual relationships with other managed care companies.

Lastly, as is apparent from the Court's rulings today, the Court declines PacifiCare's invitation to revisit the issue of whether the Court should compel arbitration of aiding and abetting and conspiracy allegations that stem from contractual relationships with other managed care companies. These claims shall be litigated before the undersigned, as there is no arbitration agreement between the parties concerning these types of claims and the justification for invoking the doctrine of equitable estoppel is not present here. Moreover, the Court will not stay this lawsuit pending appellate review of a portion of its prior Order or the resolution of any arbitrations that either are occurring presently or may occur in the future.

## III. Conclusion

In sum, Dr. Breen's claims against PacifiCare that stem from the Mercy Agreement shall be arbitrated, including RICO claims. The prior arbitration Order is modified so that Dr. Breen's claims against Foundation that stem from the Sutter Agreement (Foundation) shall be arbitrated, but the Court retains jurisdiction to hear Dr. Breen's RICO claims against Foundation that stem from the CHW Agreement. Dr. Book's claims against PacifiCare, except RICO claims and aiding and abetting claims that stem from contractual relationships with other managed care companies, shall be arbitrated. Today's ruling does not impact the Court's prior holding that aiding and abetting and conspiracy claims that stem from contractual relationships with other managed care companies shall be litigated before the undersigned. There shall be no stay of this multi-district litigation while certain defendants appeal the Court's ruling concerning partial denial of motions to compel certain plaintiffs to arbitrate their allegations lodged against them, nor shall there be a stay while certain defendants arbitrate a portion of certain plaintiffs' allegations.